Brian A. Paino (SBN 251243)
bpaino@hinshawlaw.com
Helen Mosothoane (SBN 254511)
hmosothoane@hinshawlaw.com
Zeeshan Iqbal (SBN 337990)
ziqbal@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
Telephone: 213-680-2800
Facsimile: 213-614-7399

Attorneys for *Defendants* **VAN BUREN MORTGAGE, LLC fka JG WENTWORTH HOME LENDING, LLC and FREEDOM MORTGAGE CORPORATION**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| JOYCE D. CRIST, an individual,<br><br>Plaintiff,<br><br>v.<br><br>VAN BUREN MORTGAGE, LLC fka JG WENTWORTH HOME LENDING, LLC, a Virginia limited liability company; FREEDOM MORTGAGE CORPORATION, a New Jersey corporation; NESTOR SOLUTIONS, LLC, a Florida limited liability company; and DOES 1 through 20,<br><br>Defendants. | Case No.: 5:26-cv-02720-KK-SP<br><br>**DEFENDANTS VAN BUREN MORTGAGE, LLC FKA JG WENTWORTH HOME LENDING, LLC AND FREEDOM MORTGAGE CORPORATION'S OPPOSITION TO PLAINTIFF JOYCE D. CRIST'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>*[Filed concurrently with Request for Judicial Notice]*<br><br>Action Filed: February 26, 2025<br>Removal Date: May 20, 2026 |

*Defendants* Van Buren Mortgage, LLC fka JG Wentworth Home Lending, LLC ("Van Buren") and Freedom Mortgage Corporation ("Freedom," and together with Van Buren, the "Defendants") respectfully submit this opposition to Plaintiff, Joyce D. Crist's ("Plaintiff") Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue (the "Application"). This Opposition is supported by the points and authorities cited herein, the Request for Judicial Notice ("RJN"), and the record currently before the Court.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................... 1

III.  LEGAL STANDARD ............................................................................... 5

IV.   ANALYSIS ............................................................................................... 5

   A.   THE STATE COURT'S TENTATIVE RULING DENYING INJUNCTIVE RELIEF IS PERSUASIVE AND SUPPORTS DENIAL OF THE APPLICATION ................................................. 5

   B.   PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON HER § 2923.6 CLAIM .......................................... 6

   C.   PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON HER § 2924f CLAIM ............................................ 9

   D.   PLAINTIFF FAILED TO JOIN AN INDISPENSABLE PARTY ......... 12

   E.   PLAINTIFF IS UNLIKELY TO PREVAIL ON HER OTHER CLAIMS ........................................................................................ 12

   F.   THE BALANCE OF EQUITIES DOES NOT FAVOR PLAINTIFF AND PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM WARRANTING EX PARTE RELIEF .......... 15

   G.   THE ATTORNEYS' FEES REQUEST IS PREMATURE AND UNSUPPORTED .......................................................................... 16

V.    CONCLUSION ........................................................................................ 17

86160\330441851.v1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*,
2015 U.S. Dist. LEXIS 189863, 2015 WL 12860470 (C.D. Cal. 2015)............14

*Corvello v. Wells Fargo Bank, NA*,
728 F.3d 878 (9th Cir. 2013) ........................................................................7

*Cardenas v. Caliber Home Loans, Inc.*,
281 F.Supp.3d 862 (N.D. Cal. 2017)...........................................................6

*Esquire Properties Trading, Inc. v. Starmax Enterprises, Inc.*,
2014 U.S. Dist. LEXIS 198858 (C.D. Cal. 2014) ........................................5

*Rockridge Tr. v. Wells Fargo, N.A.*,
985 F.Supp.2d 1110 (N.D. Cal. 2013)..........................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..........................................................................................5

**State Cases**

*Arnolds Management Corp. v. Eischen*,
158 Cal.App.3d 575 (1984) .........................................................................16

*Bushell v. JPMorgan Chase Bank, N.A.*,
220 Cal.App.4th 915 (2013) ........................................................................7

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal.4th 342 (1992)....................................................................................13

*CDF Firefighters v. Maldonado*,
158 Cal.App.4th 1226 (2008) ......................................................................13

*Chapman v. Skype Inc.*,
220 Cal.App.4th 217 (2013) ........................................................................14

*City of Cotati v. Cashman*,
29 Cal.4th 69 (2002).....................................................................................15

*I.E. Associates v. Safeco Title Ins. Co.*,
39 Cal.3d 281 (1985)....................................................................................10

**TABLE OF AUTHORITIES**

*Karlsen v. American Sav. & Loan Assn.*,
  15 Cal.App.3d 112 (1971) ...................................................................................16

*Levy v. State Farm Mutual Automobile Insurance Company*,
  150 Cal.App.4th 1 (2007) ...................................................................................12

*PLCM Group, Inc. v. Drexler*,
  22 Cal.4th 1084 (2000) ......................................................................................17

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal.4th 979 (2004) ........................................................................................14

*Small v. Fritz Companies, Inc.*,
  30 Cal.4th 167 (2003) ........................................................................................14

*Vicko Ins. Servs., Inc. v. Ohio Indem. Co.*,
  70 Cal.App.4th 55 (1999) ...................................................................................11

*Washington Mutual Bank v. Blechman*,
  157 Cal.App.4th 662 (2007) ...............................................................................12

**Federal Statutes**

11 U.S.C. § 362(a) ................................................................................................11

**State Statutes**

Cal. Civ. Code § 2920.5(c)(2)...............................................................................2

Cal. Civ. Code § 2923.6..................................................................................*passim*

Cal. Civ. Code § 2923.6(c) ...........................................................................2, 6, 7

Cal. Civ. Code § 2923.6(c)(2)...........................................................................7, 8

Cal. Civ. Code § 2923.6(g) .................................................................................9

Cal. Civ. Code § 2923.6(h) .................................................................................6

Cal. Civ. Code § 2923.7....................................................................................11

Cal. Civ. Code § 2923.55..................................................................................11

Cal. Civ. Code § 2923.4(a) ..............................................................................16

Cal. Civ. Code § 2924.9....................................................................................11

**TABLE OF AUTHORITIES**

Cal. Civ. Code § 2924.10....................................................................................11

Cal. Civ. Code § 2924.11....................................................................................11

Cal. Civ. Code § 2924.12(a) ...........................................................................2, 9, 11

Cal. Civ. Code § 2924.12(a)(1) ...............................................................................6

Cal. Civ. Code § 2924.12(b) .........................................................................2, 6, 9, 11

Cal. Civ. Code § 2924.12(h)...................................................................................16

Cal. Civ. Code § 2924.17....................................................................................11

Cal. Civ. Code § 2924f .................................................................................*passim*

Cal. Civ. Code § 2924f(1)....................................................................................10

Cal. Civ. Code § 2924f(4)....................................................................................10

Cal. Civ. Code § 2924f(f)(1)...................................................................................9

Cal. Civ. Code § 2924f(f)(2)...............................................................................9, 10

Cal. Civ. Code § 2924g(c)(1).................................................................................10

Cal. Civ. Code § 2924m...................................................................................3, 15

## Other Authorities

12 C.F.R. § 1024.....................................................................................3, 12, 14, 15

12 C.F.R. § 1024.17(f)(2) ....................................................................................14

12 C.F.R. § 1026.36 ...........................................................................................15

## Rules

Fed. R. Civ. Proc. 65(b) .......................................................................................1

**TABLE OF AUTHORITIES**

86160\330441851.v1

## I.      INTRODUCTION

Plaintiff moves for a temporary restraining order and preliminary injunction preventing the "transfer" of the real property located at 1015 Hicks Drive, Big Bear City, California 92314 (the "Property"). Plaintiff's Application is nothing more than a recycled version of the same request for injunctive relief that the Superior Court of California, County of San Bernardino (the "State Court"), already considered in a comprehensive tentative ruling. The State Court found that Plaintiff failed to demonstrate a likelihood of success on the merits of her claims under California Civil Code §§ 2923.6 and 2924f - the very same claims on which Plaintiff bases the instant Application. This Court should reach the same result. The Application rests on two theories: (1) that the March 3, 2026 foreclosure sale of the Property violated California Civil Code § 2923.6 because Plaintiff had a loan modification application denied less than 30 days before the sale; and (2) that co-defendant, Nestor Solutions, LLC ("Nestor") accepted a bid of less than 67% of the Property's appraised value in violation of California Civil Code § 2924f. Neither theory has merit, as both the State Court and Defendants' analysis demonstrate. Moreover, Plaintiff has not shown the "immediate and irreparable injury" required for ex parte relief under Federal Rule of Civil Procedure 65(b), and her Application fails to satisfy the heightened standard for ex parte relief in this District. For these reasons, as discussed more fully herein, the Application should be denied.

## II.     FACTUAL BACKGROUND

On or about July 8, 2017, Plaintiff obtained a mortgage loan (the "Loan") from Van Buren in the original principal sum of $215,000, the terms of which are set forth in a promissory note (the "Note") secured by a deed of trust encumbering the Property. (*See* First Amended Complaint ("FAC") ¶ 8; RJN, **Ex. 2**, ¶¶ 5-6, **Exs. A-B**). Freedom Mortgage subsequently acquired Van Buren and became the servicer of the loan effective November 1, 2019. (*id*. at ¶ 3; RJN, **Ex. 2**, ¶ 7). Nestor served as the foreclosure trustee under the Deed of Trust. (FAC ¶ 16).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

By Plaintiff's own admission, in 2021 or 2022, her hazard insurance lapsed. (FAC ¶ 38). Due to this lapse, Freedom obtained force-placed insurance and opened an escrow impound account. (*Id*.) In September 2022, Plaintiff obtained her own California Fair Plan policy. (*Id*.). Plaintiff alleges that Freedom continued making payments on the California Fair Plan policy she was already paying for, and that this created an accounting error that caused her loan to appear delinquent. (*Id*. at ¶ 39). She has been in continuous default under the Loan since April 2021. (*See* RJN, **Ex. 2**, ¶ 8).

On August 29, 2024, Freedom offered Plaintiff a modification of the Loan (the "2024 Modification Offer"). (*See* RJN, **Ex. 2**, ¶ 9, **Ex. C**). She failed to timely accept the 2024 Modification Offer and therefore remained in default under the Loan. (*See id.* at ¶ 9). As a result, on November 17, 2024, Nestor recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against the Property. (FAC ¶ 16). Following Plaintiff's failure to cure the default reference din the NOD, on January 23, 2025, Nestor recorded a Notice of Trustee's Sale ("NOS") noticing a foreclosure sale for March 4, 2025. (*Id*. at ¶ 17). That sale was postponed, and the foreclosure process continued through a series of postponed dates: October 28, 2025; November 14, 2025; January 20, 2026; and ultimately March 3, 2026. No new Notice of Trustee's Sale was ever recorded. (*Id*. at ¶¶ 18, 27, 28, 31).

On August 25, 2025, Plaintiff applied for another loan modification. (*Id*. at ¶ 116). Freedom denied her application on October 13, 2025. (*Id*. at ¶ 23). Thereafter, on October 28, 2025, Nestor attempted to conduct a foreclosure sale of the Property.[1] (*Id*. at ¶ 27). Nestor did not obtain a bid of at least 67% of the Property's appraised value and the sale was therefore not completed - Nestor instead postponed the sale to November 14, 2025. (*Id*.)

---

[1] Plaintiff alleges she filed for bankruptcy on October 28, 2025. (FAC ¶ 27). By virtue of this bankruptcy filing, Plaintiff was no longer a "borrower" within the meaning of the Homeowner Bill of Rights ("HBOR") and therefore not entitled to any of HBOR's protections. *See* Cal. Civ. Code § 2920.5(c)(2) (defining "borrower" to exclude an individual in bankruptcy); Cal. Civ. Code § 2923.6(c) (prescribing protections available to a "borrower" who submits a complete application for a first lien loan modification); Cal. Civ. Code §§ 2924.12(a)-(b) (prescribing remedies available to "a borrower").

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

On December 9, 2025, Freedom sent Plaintiff an offer for a FHLMC Flex Modification (the "December 2025 Modification Offer"). (*id.* at ¶¶ 29-30; RJN, **Ex. 2**, ¶ 11). Under the terms of the December 2025 Modification Offer, Plaintiff was required to make three payments of $1,938.33 on January 1, 2026, February 1, 2026, and March 1, 2026, respectively. (FAC ¶ 30). Plaintiff did not timely accept the December 2025 Modification Offer. (*See* RJN, **Ex. 2**, ¶ 11).

On February 4, 2026, Freedom sent Plaintiff a letter stating she failed to perform on the December 2025 Modification and that loan servicing, including foreclosure, would resume. (FAC ¶ 32; RJN, **Ex. 2**, at ¶ 12). Plaintiff states she did not receive this letter until February 18, 2026, when counsel for Van Buren emailed it to her. (FAC ¶ 32). The foreclosure proceeded on March 3, 2026, and Nestor accepted a bid of $317,500 from a bona fide third party (the "Buyer"). (*Id.* at ¶ 33). Following the March 3, 2026 foreclosure sale, notices of intent to bid were submitted to Nestor under California Civil Code § 2924m. (*Id.* at ¶ 34).

Prior to the foreclosure sale of the Property, on February 26, 2025, Plaintiff commenced this action by filing her original complaint (the "Original Complaint") against "JG Wentworth" in which she enumerated claims for: (1) fraud; (2) common counts; (3) breach of contract; and (4) "intentional tort." She subsequently filed an Amendment to Complaint on June 13, 2025, wherein she clarified that "JG Wentworth Home Lending" was the intended defendant to this action. Van Buren filed a demurrer to the Original Complaint on February 13, 2026, which the Court sustained on March 25, 2026.

On April 14, 2026, Plaintiff filed her FAC wherein she enumerates claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) negligence; (6) violation of Cal. Civ. Code § 2923.6; (7) violation of Cal. Civ. Code § 2924f; (8) violation of 12 C.F.R. § 1024, *et seq.*; and (9) declaratory relief. The FAC adds Freedom and Nestor as defendants to this action. On April 16, 2026, the Superior Court granted

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

Plaintiff's Ex Parte Application for a Temporary Restraining Order, and issued a temporary restraining order ("TRO") conditioned on Plaintiff's posting of a $10,000 undertaking. The State Court set an order to show cause hearing regarding a preliminary injunction for May 21, 2026.

Plaintiff filed her Motion for Preliminary Injunction on April 28, 2026 (the "First Motion"). Defendants filed their opposition on May 6, 2026, and Plaintiff filed a reply on May 13, 2026. The State Court issued a tentative ruling on Plaintiff's Motion for Preliminary Injunction, finding that Plaintiff had not demonstrated a likelihood of success on the merits of her claims (the "Tentative Ruling"). (*See* RJN, **Ex. 1**). Specifically, the State Court concluded that the December 2025 Modification Offer constituted a loan modification "offer" for purposes of California Civil Code § 2923.6, that Plaintiff failed to accept the offer within 14 days, and that the foreclosure could therefore properly resume. (*Id.*). The State Court further found that Defendants had the "better position regarding the merits" of Plaintiff's § 2924f claim, concluding that the March 2026 sale was not the initial sale for purposes of § 2924f and that no private right of injunctive relief is available under that statute. (*Id.*). Having found that Plaintiff failed to establish a likelihood of success on the merits, the Tentative Ruling indicated the State Court would deny Plaintiff's Motion for Preliminary Injunction in its entirety and dissolved the TRO. (*Id.*).[2]

On May 20, 2026, the eve of the order to show cause hearing - Defendant Freedom filed a Notice of Removal, removing this action to the United States District Court for the Central District of California, Eastern Division. On June 4, 2026, this Court issued a Civil Standing Order, which required motions pending in State Court to be re-noticed within 30 days of the filing of the notice of removal. On June 16, 2026, Plaintiff filed the instant Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue, asserting the same

---

[2] Given the Removal of the Case to Federal Court, the State Court lacked jurisdiction to adopt the Tentative Ruling.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

claims and theories that the State Court already considered and rejected in its tentative ruling. Plaintiff's Application is based on her contention that the State Court TRO has expired following removal and that she faces imminent harm absent a new TRO from this Court.

## III.   LEGAL STANDARD

"The standard for issuing a temporary restraining order [] is the same as that for issuing a preliminary injunction." *Esquire Properties Trading, Inc. v. Starmax Enterprises, Inc.*, 2014 U.S. Dist. LEXIS 198858, at *8 (C.D. Cal. 2014) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *Ali v. United States*, 932 F.Supp. 1206, 1208 (N.D. Cal. 1996)). "A preliminary injunction is an extraordinary and drastic remedy, and a district court should enter preliminary injunctive relief only upon a clear showing that the plaintiff is entitled to such relief[.]" Id. at *8-9 (citations and internal quotations omitted). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and (4) that the public interest favors injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## IV.   ANALYSIS

### A.   THE STATE COURT'S TENTATIVE RULING DENYING INJUNCTIVE RELIEF IS PERSUASIVE AND SUPPORTS DENIAL OF THE APPLICATION

As an initial matter, Plaintiff's Application seeks the same relief, on the same grounds, that the Superior Court of California already considered and rejected. After full briefing, the State Court issued the Tentative Ruling denying Plaintiff's Motion for Preliminary Injunction in its entirety. (*See* RJN, **Ex. 1**). The State Court found that Plaintiff failed to demonstrate a likelihood of success on either of the two claims underlying her request for injunctive relief - her claim under California Civil Code § 2923.6 and her claim under California Civil Code § 2924f. (*Id.*). The Tentative Ruling

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

further dissolved the TRO which had previously issued and indicated that the $10,000 undertaking posted by Plaintiff remain in place for thirty days to allow Defendants to file any motion for damages sustained by reason of the TRO. (*Id.*). While a state court's tentative ruling is not binding on this Court, it is entitled to significant weight as a well-reasoned analysis of the same claims and facts at issue here. The State Court's reasoning, set forth below, is consistent with Defendants' position and further demonstrates that Plaintiff cannot satisfy the standard for injunctive relief.

**B.     PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON HER § 2923.6 CLAIM**

Section 2923.6 of the California Civil Code prohibits the recording of a notice of default or notice of sale, or the conducting of a foreclosure sale, while "a complete application for a first lien loan modification" is pending. *See* Cal. Civ. Code § 2923.6(c). An application is "complete" within the meaning of section 2923.6 "when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." *See* Cal. Civ. Code § 2923.6(h). The anti-dual tracking protections of section 2923.6 are lifted once: (1) the mortgage servicer makes a written determination that the borrower is ineligible for a modification and allows the borrower 30 days to appeal the decision; (2) *the borrower does not accept an offered modification within 14 days of the offer*; or (3) the borrower accepts a loan modification, but defaults or otherwise breaches the agreement. *See* Cal. Civ. Code § 2923.6(c). Only material violations of section 2923.6 are actionable. *See* Cal. Civ. Code §§ 2924.12(a)(1), (b). A violation is material if it "affects [the borrower's] loan obligations, disrupt[s] [the borrower's] loan modification process, or cause[s] [the borrower] to suffer harm that [they] would not have suffered otherwise." *Cardenas v. Caliber Home Loans, Inc.*, 281 F.Supp.3d 862, 870 (N.D. Cal. 2017) (citation and internal quotations omitted).

Plaintiff argues that the foreclosure sale of the Property violated § 2923.6 because it was conducted less than 30 days after her loan modification application was denied.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

She acknowledges receiving the December 2025 Modification Offer, but claims it was "not a loan modification offer and [her] failure to accept within 14 days could not serve as the basis for conducting the foreclosure sale under Civil Code section 2923.6, subdivision (c)(2)." This allegation recognizes that, under the plain language of section 2923.6(c), a mortgage servicer may conduct a foreclosure sale where the borrower does not accept an offered first lien loan modification within 14 days of the offer. *See* Cal. Civ. Code § 2923.6(c)(2). Unsurprisingly, Plaintiff cites no law supporting the proposition that § 2923.6(c) requires a "first lien loan modification" to be a permanent, fully executed modification agreement. The statute simply requires that a modification be "offered." The December 2025 Modification Offer offered Plaintiff a FHLMC Flex Modification, the terms of which required her to first tender trial payments. Freedom otherwise agreed under the terms of the December 2025 Modification Offer to suspend foreclosure activity in the event Plaintiff timely tendered the trial payments - *i.e.*, Freedom agreed to forego the exercise of a contractual right. Allowing Plaintiff to tender trial payments that were insufficient to cure her default on the Loan without the consequence of a foreclosure sale was clearly a modification of the terms of the Loan.

Simply put, the structure of the December 2025 Modification Offer is standard for loan modification offers and this structure has been deemed to constitute a first lien loan modification offer within the meaning of the HBOR. *See Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal.App.4th 915, 924 (2013) (recognizing that a TPP letter constitutes a "loan modification offer" within the meaning of the HBOR where the servicer offers a permanent modification upon successful completion of a trial period). Courts interpreting analogous federal Home Affordable Modification Program frameworks have similarly held that a trial payment plan ("TPP") constitutes a binding offer that, when not accepted, authorizes the servicer to proceed. *See Car Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013) (TPP offer enforceable as modification offer upon borrower compliance). The State Court reached the same conclusion through its Tentative Ruling, finding that the December 2025 Modification

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

Offer "would qualify as a loan modification 'offer'" under contract principles and that "there was no acceptance of the offer within the 14-day period, so the foreclosure could resume."

In short, the December 2025 Modification Offer was a "first loan modification" offer within the meaning of § 2923.6(c)(2). Plaintiff does not dispute that she failed to accept the offer within 14 days. This failure entitled Freedom to resume foreclosure proceedings against the Property. *See* Cal. Civ. Code § 2923.6(c)(2). The February 4, 2026 letter Freedom sent Plaintiff merely notified of her failure to perform under the December 2025 Modification Offer and that this failure meant foreclosure would resume. (FAC ¶ 32). The letter did not constitute a denial letter within the meaning of § 2923.6 as Plaintiff was, in fact, deemed to have been eligible for a first lien loan modification offer - she simply failed to timely accept the offer and pursue this eligibility. This is the sequence § 2923.6(c)(2) expressly authorizes.

Even if Plaintiff could establish that the December 2025 Modification Offer did not constitute a "first lien loan modification" offer within the meaning of § 2923.6 (she cannot), she is nevertheless unlikely to prevail on her claim. As noted above, only *material* violations of the HBOR are actionable. *See* Cal. Civ. Code §§ 2924.12(a)-(b). Plaintiff does not plead any nonconclusory facts to support the materiality element of her claim. She instead makes only the wholly conclusory allegations that she "was harmed" as a result of the purported violation of § 2923.6. (*See* FAC, ¶¶ 120, 127). These conclusory allegations are insufficient to state a viable claim under § 2923.6, much less establish a likelihood of prevailing on the claim. Another defect with Plaintiff's claim under § 2923.6 is that it ignores the impact of the 2024 Modification Offer on Freedom's obligations under the statute. The statute specifically provides that, "[i]n order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of the [statute]." Cal.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

Civ. Code § 2923.6(g). An obligation to review an application in these circumstances arises only where "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." *Id.* There are no allegations in the FAC demonstrating that Plaintiff satisfied this requirement. For all the foregoing reasons, Plaintiff is unlikely to prevail on her claim for violation of § 2923.6.

### C.    **<u>PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON HER § 2924f CLAIM</u>**

The second theory Plaintiff advances in support of her request for injunctive relief is that the foreclosure sale violated Cal. Civ. Code § 2924f. That statute provides, in pertinent part, that a "trustee shall not sell [a] property at [an] ***initially scheduled date of sale*** for less than 67 percent of [its] fair market value." Cal. Civ. Code § 2924f(f)(1) (emphasis added). The statute goes on to provide that, "[i]f the property remains unsold after the ***initial trustee's sale***…then the trustee shall postpone the sale for at least seven days, and the property may be sold to the highest bidder." Cal. Civ. Code § 2924f(f)(2) (emphasis added). By Plaintiff's own admission, Nestor first conducted a foreclosure sale on October 28, 2025. (*See* FAC ¶ 27). She also admits that Nestor postponed the foreclosures sale "[b]ecause the highest bid was for less than 67 percent of the Property's appraised value," and that a subsequent sale was completed on March 3, 2026. (*See id.* at ¶¶ 27, 31). Given these admissions, the viability of Plaintiff's claim under § 2924f depends entirely on the treatment of the March 3, 2026 sale as the "initially scheduled date of sale" within the meaning of § 2924f. In apparent recognition of this fact, Plaintiff argues that the October 28, 2025 sale was invalid because it was conducted in violation of § 2923.6. There is no merit to this argument.

To the contrary, none of the remedial provisions of the HBOR provide for the invalidation of a foreclosure sale conducted in violation of one of its provisions. *See* Cal. Civ. Code §§ 2924.12(a)-(b) (specifying remedies for material violations of the

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

HBOR). It follows that the October 2025 sale was not invalid due to a purported violation of the HBOR. As noted above, by its plain terms, § 2924f's 67% minimum bid restriction otherwise applies only to the "initially noticed" foreclosure sale. Here, it is indisputable that the initially noticed sale was the March 4, 2025 sale set out in the NOS. (FAC ¶ 17). Every subsequent date (October 28, 2025, November 14, 2025, January 20, 2026, and March 3, 2026) was a postponement of the originally noticed sale date. No new Notice of Trustee's Sale was ever recorded. (FAC ¶¶ 18, 27, 28, 31). Under California law, a postponed trustee's sale is a continuation of the original proceeding. *See* Cal. Civ. Code § 2924g(c)(1) (permitting postponement without re-notice up to 365 days from the original with no new notice required); *I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 289 (1985). The 67% restriction does not independently apply to postponed continuations of an originally noticed sale. Even if § 2924f were construed to apply to the first scheduled sale date in which a bid of 67 percent was not achieved, that date in this case was the October 2025 sale date. It is therefore immaterial that the March 2026 sale was for an amount that was allegedly less than 67% of the fair market value of the Property - *i.e.,* after the Property went unsold at the October 2025 sale and the sale was postponed for at least seven days, Nestor was free to sell the Property to the highest bidder, regardless of the sale price. *See* Cal. Civ. Code § 2924f(f)(2).

Importantly, as stated above, the Property was sold on March 3, 2026 to a bona fide third-party purchaser. This fact precludes Plaintiff from challenging the sale based on a violation of § 2924f(1). *See* Cal. Civ. Code § 2924f(4) ("A failure to comply with the provisions of paragraph (1) [of § 2924f] shall not affect the validity of a trustee's sale or a sale to a bona fide purchaser for value."). In any event, even if Plaintiff could establish a violation of § 2924f (she cannot), the statute does not provide a private right of action. On the contrary, section 2924f contains no express provision authorizing an aggrieved borrower to void a completed sale or obtain injunctive relief based on a bid price deficiency. Where the Legislature has intended to create borrower remedies in the

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

non-judicial foreclosure context, it has done so expressly. *See e.g.*, Cal. Civ. Code § 2924.12(a) (expressly authorizing injunctive relief for material violations of §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.17); Cal. Civ. Code § 2924.12(b) (expressly authorizing damages for violations of the same statutes). Section 2924f appears in neither list. The omission is significant. *See Vicko Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 62 (1999) ("[A] private right of action exists only if the language of the statute or its legislative history clearly indicates that the Legislature intended to create such a right to sue for damages."). The State Court agreed, noting that "[t]here is also no apparent injunctive relief available if the sale is not postponed" under § 2924f and that Defendants had "the better position regarding the merits of the claim." It necessarily follows that Plaintiff is not entitled to injunctive relief based on a violation of § 2924f.

Plaintiff alternatively argues that the October 28, 2025 foreclosure sale was invalid because Plaintiff filed for bankruptcy on the same date, triggering the automatic stay under 11 U.S.C. § 362(a). This argument also fails. To the extent the October 28, 2025 sale was not completed, it was not completed because no bid of at least 67% of fair market value was received - not because of the automatic stay. (FAC ¶ 27). By Plaintiff's own admission, the sale was "postponed" because "the highest bid was for less than 67 percent of the Property's appraised value." (*Id*.). Moreover, Plaintiff's bankruptcy was subsequently dismissed on December 22, 2025. (*See* RJN, **Ex. 2**, ¶ 13). Even if the automatic stay affected the October 28, 2025 sale date, it does not transform the March 3, 2026 sale into the "initially scheduled date of sale" for purposes of § 2924f. The initially noticed sale date remained March 4, 2025, as set forth in the NOS. Subsequent postponements - whether due to the 67% threshold, the temporary bankruptcy stay, or loss mitigation review - were continuations of the originally noticed sale, not new sale proceedings.

///

///

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

### D.     PLAINTIFF FAILED TO JOIN AN INDISPENSABLE PARTY

The ultimate objective of the Application is to prevent Defendants from completing the foreclosure sale to Buyer (or the overbidders) and the FAC seeks to invalidate the sale altogether. Yet Plaintiff has not joined Buyer or any of the overbidders in this action. It is indisputable that Buyer's and overbidders' rights would be impacted by both an injunction preventing the formal conveyance of title to the Property and the invalidation of the sale. Under California law, "[a] person is an indispensable party to litigation if his or her rights must necessarily be affected by [a] judgment." *Washington Mutual Bank v. Blechman*, 157 Cal.App.4th 662, 667 (2007). In fact, "[w]hen a party seeks to set aside and vacate a trustee's sale in a foreclosure proceeding, there can be no doubt that the parties to the sale transaction are indispensable parties." *Id.* at 668. Because Plaintiff has not joined an indispensable party to this action (namely, Buyer and the overbidders), she is not entitled to the relief she seeks in either the Motion or the FAC.

### E.     PLAINTIFF IS UNLIKELY TO PREVAIL ON HER OTHER CLAIMS

While the Application is based exclusively on Plaintiff's claims under §§ 2923.6 and 2924f, the FAC enumerates additional claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) negligence; (6) violation of "12 C.F.R. 1024 et seq."; and (7) declaratory relief. Plaintiff is unlikely to prevail on any of these claims. To start, Plaintiff fails to identify any specific provision of the Loan that Defendants are alleged to have breached. She has therefore failed to plead, much less establish a likelihood of prevailing on, a claim for breach of contract. *See Levy v. State Farm Mutual Automobile Insurance Company*, 150 Cal.App.4th 1, 5-6 (2007) ("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."). The claim is ultimately premised on Plaintiff's contention that Defendants improperly established an escrow impound on the Loan for the payment

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

of insurance. She notably acknowledges she had a lapse in insurance in 2021. (*See* FAC ¶ 46). This lapse constituted a breach under the Deed of Trust. (*See* RJN, **Ex. 2**, **Ex. B**, ¶ 5) (requiring Plaintiff to maintain insurance). Plaintiff has otherwise been in continuous default on the Loan since April 2021. (*See* RJN, **Ex. 2**, ¶ 8). These breaches on the part of Plaintiff prevent her from establishing the "performance" element of a breach of contract claim. *See CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).

Regardless, there is no merit to Plaintiff's theory that Defendants breached the Loan by establishing an impound account. Indeed, under the express terms of the Deed of Trust, Freedom was authorized to establish an escrow impound account for the payment of insurance and to apply Plaintiff's monthly payments toward the impound account. (*See* RJN, **Ex. 2**, **Ex. B**, ¶¶ 2-3). By virtue of these express rights, Plaintiff cannot establish a viable breach of contract claim on the basis that Freedom established an escrow impound account and applied payments toward the account. Nor can she establish a claim for breach of the implied covenant on the basis of this same conduct (or on the basis of Defendants' purported failure to properly review her loan modification application - *i.e.*, imposing an implied obligation on Defendants to consider a modification of the Loan is inconsistent with the express terms of the Loan). *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992) (recognizing that the implied covenant "should never be read to vary express terms" of a contract).

Plaintiff conflates Freedom's right to establish an escrow impound account for the payment of insurance premiums with Freedom's right to procure insurance in the event of a lapse in coverage. These are two separate and distinct rights under the Deed of Trust. (*See* RJN, **Ex. 2**, **Ex. B**, ¶ 5 [authorizing Freedom to obtain insurance in the event of a lapse in coverage], ¶ 3 [more generally authorizing Freedom to collect sums to pay insurance premiums]). Put simply, the fact that Plaintiff may have procured her own insurance after a lapse in coverage did not prevent Freedom from maintaining the

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

escrow impound account to pay the premiums due on the policy Plaintiff procured. The handling of the escrow account was otherwise governed by the Real Estate Settlement Procedures Act, under which Plaintiff had no right to have any surplus funds held in the escrow account applied to the loan balance. *See* 12 C.F.R. § 1024.17(f)(2) (specifying procedures for handling surplus funds in an escrow impound account). In light of the foregoing, there is no merit whatsoever to the theories underlying Plaintiff's contract-based claims.

There is similarly no merit to Plaintiff's claims for intentional and negligent misrepresentation as those claims are based on her same flawed theory that Defendants were not entitled to establish an escrow impound account. Her claims for intentional and negligent misrepresentation do not otherwise satisfy the heightened pleading requirement for such claims. *See Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 231 (2013); *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 184 (2003). Her claim for negligence is not alleged against Defendants - it is instead alleged against only Nestor. Nevertheless, the claim fails as a matter of law because Nestor did not owe Plaintiff a duty of care. *See Rockridge Tr. v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1162 (N.D. Cal. 2013) (holding a trustee under a deed of trust does not owe a borrower any duty of reasonable care supporting a negligence claim under California law). In any event, Plaintiff's tort claims are barred by the economic loss rule. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) ("Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other.") (cleaned up); *Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*, 2015 U.S. Dist. LEXIS 189863, 2015 WL 12860470, at *7 (C.D. Cal. 2015) (finding that the plaintiff's fraud and negligent misrepresentation claims were precluded by the economic loss rule because the plaintiff's tort allegations mirrored its breach of contract allegations).

Plaintiff's eighth cause of action is titled "violation of 12 CFR 1024 et seq." However, the only specific reference in the FAC to title 12 of the Code of Federal

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

Regulations is to 12 C.F.R. § 1026.36. The alleged conduct giving rise to the claim is Freedom's purported improper application of payments. As previously discussed, there was nothing improper about Freedom applying payments toward Plaintiff's escrow impound account - it was expressly authorized to do so under the terms of the Deed of Trust. It follows that Plaintiff has not alleged sufficient facts to support a claim for violation of "12 CFR 1024 et seq." Lastly, Plaintiff's claim for declaratory relief (which is also alleged against only Nestor) fails in the absence of a viable antecedent claim. *City of Cotati v. Cashman*, 29 Cal.4th 69, 80 (2002) ("a request for declaratory relief will not create a cause of action that otherwise does not exist"). For all the foregoing reasons, Plaintiff is unlikely to prevail on her remaining claims.

## F.   THE BALANCE OF EQUITIES DOES NOT FAVOR PLAINTIFF AND PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM WARRANTING EX PARTE RELIEF

Plaintiff's equitable showing is materially incomplete for the same reason it was incomplete at the TRO stage. The Cameron Young declaration discloses that nine notices of intent to bid were submitted to Nestor under California Civil Code § 2924m. Neither these overbidders nor Buyer are parties to this action. Nor have they received notice of the Application or an opportunity to be heard. While Plaintiff frames the balance of equities as the potential loss of her home against Defendants' financial interest in recovering the Loan balance, this framing ignores the interests of Buyer and the overbidders who participated in a statutory bidding process in good faith and whose ability to complete their purchases is extinguished by every day an injunction remains in place.

This Court cannot conduct a complete equitable analysis without evaluating the rights and interests of Buyer and the overbidders. The equitable analysis on the present record is necessarily incomplete. The State Court recognized this deficiency, noting that "the third-party purchaser would be directly affected by the order since that party would not receive title" and that "[w]ithout hearing from the purchaser, the Court cannot

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

adequately balance the harms." Moreover, Plaintiff's irreparable harm argument, while sympathetic, is not without qualification. California courts have held that a plaintiff seeking equitable relief to set aside a foreclosure sale must generally tender the amount owed as a condition of obtaining such relief. *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 578-79 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the obligation"); *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117 (1971) (tender rule applies to equitable actions challenging foreclosure). Plaintiff has not offered to tender the outstanding loan balance, has not argued that tender should be excused, and has not addressed this requirement at all.

Plaintiff has also failed to demonstrate that she is entitled to ex parte relief. Ex parte relief is "solely for extraordinary relief and [is] discouraged." *Mission Power Eng'g Co.*, 883 F.Supp. at 488. Plaintiff claims the State Court TRO has expired following removal and that she faces imminent harm if this Court does not act immediately. However, any urgency is of Plaintiff's own making. The case was removed on May 20, 2026, and Plaintiff waited until June 16, 2026 - nearly a month - before filing the instant Application. Plaintiff's delay in seeking relief undermines any claim that ex parte procedures are necessary. Moreover, Defendants have not taken any steps to record a trustee's deed upon sale or otherwise complete the transfer of the Property. Plaintiff's speculative fear that Defendants "may" proceed with a transfer does not satisfy the standard for the extraordinary remedy of ex parte relief.

### G.    THE ATTORNEYS' FEES REQUEST IS PREMATURE AND UNSUPPORTED

As part of the Application, Plaintiff requests an award of attorneys' fees pursuant to California Civil Code § 2923.4(a). Contrary to Plaintiff's argument in the Application, attorneys' fees under the HBOR are not, in fact, mandatory. They are instead discretionary. *See* Cal. Civ. Code § 2924.12(h). Where, as here, a Plaintiff seeks fees prior to a defendant having a full opportunity to adjudicate claims on the merits, an

86160\330441851.v1

award of attorneys' fees is properly denied. Even if the Court is inclined to consider Plaintiff's premature fee request, the request is procedurally improper and should be addressed through a properly noticed motion supported by appropriate billing records. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095-96 (2000) (fee awards require detailed time records sufficient to permit the court to assess the reasonableness of the hours claimed and the rates applied).

## V.    CONCLUSION

For the foregoing reasons, and in light of the State Court's tentative ruling denying the identical request for injunctive relief, the Court should deny Plaintiff's Ex Parte Application in its entirety.

Dated: June 19, 2026                    **HINSHAW & CULBERTSON LLP**


By: _/s/ Zeeshan Iqbal_
    BRIAN A. PAINO
    HELEN MOSOTHOANE
    ZEESHAN IQBAL
Attorneys for *Defendants* **VAN BUREN MORTGAGE, LLC fka JG WENTWORTH HOME LENDING, LLC and FREEDOM MORTGAGE CORPORATION**


## LOCAL CIVIL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for *Defendants* Van Buren Mortgage, LLC fka JG Wentworth Home Lending, LLC and Freedom Mortgage Corporation, certifies that this brief contains 5,792 words, which complies with the word limit of L.R. 11- 6.2

Dated: June 19, 2026                    **HINSHAW & CULBERTSON LLP**


By: _/s/ Zeeshan Iqbal_
    BRIAN A. PAINO
    HELEN MOSOTHOANE
    ZEESHAN IQBAL
Attorneys for *Defendants* **VAN BUREN MORTGAGE, LLC fka JG WENTWORTH HOME LENDING, LLC and FREEDOM MORTGAGE CORPORATION**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

86160\330441851.v1

# PROOF OF SERVICE

*Joyce D. Crist*
*v.*
*Van Buren Mortgage, LLC, fka JG Wentworth Home Lending, LLC, et al.*
**USDC, Central District of California Case No.: 5:26-cv-02720-KK-SP**

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 350 South Grand Ave., Suite 3600, Los Angeles, CA 90071-3476. Email: crico@hinshawlaw.com

On **June 19, 2026**, I served the document(s) entitled: **DEFENDANTS VAN BUREN MORTGAGE, LLC FKA JG WENTWORTH HOME LENDING, LLC AND FREEDOM MORTGAGE CORPORATION'S OPPOSITION TO PLAINTIFF JOYCE D. CRIST'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

## SEE ATTACHED SERVICE LIST

☐ **(BY MAIL)**:    I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **BY EMAIL SERVICE** as follows: By email or electronic transmission: Based on any agreement between the parties and/or as a courtesy, I sent the document(s) to the person(s) at the email address(es) listed on the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(BY CM/ECF SERVICE)**:    I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **June 19, 2026**, at Anaheim, California.

_____
Carolina Rico

---
1
PROOF OF SERVICE

86160\329944394.v1

## <u>SERVICE LIST</u>

*Joyce D. Crist*
*v.*
*Van Buren Mortgage, LLC, fka JG Wentworth Home Lending, LLC, et al.*
**USDC, Central District of California Case No.: 5:26-cv-02720-KK-SP**

| | |
|---|---|
| James J. Astuno, Jr., Esq.<br>Adrian R. Lyons, Esq.<br>Cameron Young, Esq.<br>ASTUNO & ASSOCIATES, APC<br>1200 Prospect St., Suite 400<br>La Jolla, CA 92037<br>Tel.: (619) 738-3744<br>Fax: (858) 228-5939<br>Email: slyons@astuno.com<br>        jj@astuno.com<br>        cyoung@astuno.com | Attorneys for *Plaintiff* **JOYCE D. CRIST** |

2
PROOF OF SERVICE

86160\329944394.v1